The next matter on our calendar is Marina Solomon versus Subway Franchisee Advertising and others. Good morning, counsel. Good morning, your honor. Ian Ballin, Greenberg-Trarig for Appellant Subway. May it please the court? This is a case about a free sandwich coupon. It's undisputed that Ms. Solomon opted in to receive a coupon while standing in line at a Subway sandwich shop in response to a display ad that plainly said it was subject to terms and conditions. Plainly? You think it plainly said it? Yes, your honor, because the question is whether it was reasonably conspicuous. And this was a display ad. It was not a website. So actually, it is as presented. You've got the big language and then you have small print. A reasonable consumer knows that small print is the terms and conditions. Mr. Ballin, let me just ask you, this appears to me to be a fundamentally different type of case than this court has ever decided. I and Nicosia and other cases, but you can correct me if I'm wrong. There is no case that I'm aware of that didn't involve someone clicking when they purchase something or registering something, but being subjected to terms and conditions simply based upon taking information off of a print ad. Is there any case that says that that's by taking the information off the print ad, you know, we can talk about the size of the print, but it seems like this is a whole new category of here that no court has decided that. Well, I'm not sure that's true. I mean, I think I think as a matter of contract law, it's always been the case that a contract can be formed through express assent or applied assent. I know, but it's the whole idea of reasonably conspicuous. We have said if you're clicking to buy something and right above it, it says by clicking or registering or purchasing, you're agreeing to these terms. We've said that's reasonably conspicuous. You're saying it's reasonably conspicuous and someone just pulls information off of a print ad that they are agreeing. And in fact, maybe you can address this, too, in the print. It doesn't even say by text, by texting this number, you're agreeing to terms and procedures. It doesn't even have the words that all these other Internet sites have, which say you are agreeing. It doesn't say you are agreeing. Right. That's that's certainly true. But again, this is a display ad and the display ad reprints what exists on the Web site. It was pointed out to the. Why would anyone think they're agreeing to terms and conditions in this type of context? If you don't say you're agreeing to something, a consumer might think to the extent they read this and saw all the terms and conditions apply, that if they were to go to that website, they would see what days of the week they can use on or other other types of restrictions regarding it, not that they're taking on any agreement to do anything or refrain from doing anything. I don't understand why a consumer would think based upon the lack of even saying you're agreeing to something that they would understand that in this context. Well, I think a reasonable consumer assumes that a free sandwich is always going to be subject to terms. Otherwise, the store would just hand out the sandwiches. But there was a display ad and the salesperson pointed out, here's the ad, a reasonable consumer. She had to take certain steps to get that free coupon. So she had to look at the ad. And when you look at the ad, this is not a cluttered ad. It's very clear what you texted. It's a very cluttered ad. Pardon me? But we don't have to decide that. Well, what was the font? What was the font of the type on this poster? Do we know? The font of the small print. I mean, if you have small print that's blown up to a billboard, then the small print can be rather large. Do we have anything in the record showing what the size was of this print? Unfortunately, we don't. And if the court concludes that the notice wasn't reasonable on remand with evidence and proof, that presumably is something that could be shown. But plainly, the ad was clear enough so that this consumer was able to affirmatively opt in, to follow the instructions. And a reasonable consumer would assume that unless the store is just handing out sandwiches, if they have to undertake certain tasks to get the free coupon... How hard would it be for your client if someone texted in that number, they get a text back letting them know before they proceed any further that you're agreeing to terms and conditions with a link to the website. All it requires is one additional text and then you would have a click where they would see it on their phone. What's so hard about that? Well, that certainly could be done. But again, the Second Circuit and Meijer made very clear that there are many different ways to set things up. The standard can't be, can you give more notice? Again, this is not for the sale of a building. Again, Meijer had a click where right above where you're clicking at the time you're registering for Uber, it says you're agreeing to terms and conditions, which is what I'm suggesting the scenario I gave you would be equivalent to. Well, I mean, again, as a matter of policy, maybe that is a better thing to do, but that's not what the law requires. And here you not only have the words terms and conditions, which a reasonable consumer would understand to mean that the offer is subject to conditions, but the actual address. And the address isn't that complicated. Subway.com slash subway route slash... All right. So let's assume the consumer stands in the store and puts in all those characters and gets to your website, your client's website. The thing that they're led to says, please carefully review these terms of use for this website. Terms of use for this website. So a reasonable consumer would look at this and say, for the website, I'm not... I thought I was going to terms and conditions for the promotion. There's nothing in... Everyone is a free sandwich. I mean, I think Justice Kavanaugh spoke to that issue directly in the Henry Schein case, last year, which is when you have a delegation clause, which you do under second circuit law, when you've got triple A, the issue of whether this dispute is within the scope of an agreement to arbitrate must be resolved by the arbitrator if there's an agreement to arbitrate. And again, under the Meyer case, the issue... We're not even up to that point. I'm familiar with that case, but we're talking about whether there's notice to the consumer or not. We have to get past that before we get into the Henry Schein issues that you're talking about. What I'm suggesting to you is a consumer who pulls this up would have no idea that there's anything in this that's going to relate to the promotion. In fact, there is nothing in there that relates to the promotion. There's no provision in there that talks about the promotion. They might think they were led to the wrong terms and conditions because they're not using the website. They're using a promotion. Well, I mean, again, I think the Meyer case talks about whether the link, whether the notice is reasonably conspicuous. It says terms and conditions. It has the exact URL address. A reasonable consumer knows that a free sandwich is going to be subject to terms if it says... Shouldn't it say terms of use for the promotion and the website? Shouldn't it say? It didn't say that. I certainly understand, Your Honor. But again, this was from a website. It was put on a board. It was pointed out to her. A reasonable consumer should understand that, although I understand what you're saying. But a reasonable consumer should understand terms and conditions with exact address means that applies to this promotion. And then it's under Henry Schein. It's up to the arbitrator to decide whether, in fact, this is outside the scope. Thank you, counsel. You reserve three minutes for rebuttal. We'll hear from Apare. Good morning, counsel. Good morning, Your Honors, and may it please the court. I'm Adrian Bacon. I'm appearing on appellee. I think Your Honors are giving the correct pushback. It's the same pushback that we have with this arbitration agreement. As Your Honors pointed out, there really is no precedent that is directly on point as to this case. And that is because this is a case that involves a mixed media arbitration agreement. I've never seen a case where a mixed media arbitration agreement involving three forms of media has been upheld by any court. And just to explain what I mean by that, Subway's call to action was a print advertisement that was displayed on the counter in the store. It was in very small print. You can see that. How big? I hate to keep harping on the same thing. But how big was this poster? You're calling it a print thing, which could suggest it's the size of an Octavo book. Or I understood it's a poster. It could be huge on a wall. How big was it? My understanding, and Your Honor, I can only speak to this based on my understanding, because as Mr. Ballin says, there's nothing specifically in the record. But my understanding is it's one of those little placards that's sitting with a base and a fold up that goes like that on the counter. And so it's relatively small. It's smaller than a sheet of paper. You can tell that it's very small because the actual text of it that is in the record is very blurry, as if it's been blown up in size. And so this text is minuscule. I would imagine that it's something like size two or three font, as far as how small this fine print is. Mr. Bacon, let me ask you two questions. This is sort of a threshold question, so I'm not confused. There was some back and forth as to whether or not this was the actual ad that your client saw in getting the number, because she didn't remember doing so. But I just want to make sure, for purposes of this appeal, you're willing to concede that, since Subway says this is the way that this information is conveyed, that it would have been through such an ad? Here's what we do have in the record. Subway has advised that they had ads that were either this ad or substantially, for purposes of the arguments that are being presented, substantially identical to the call to action that's in the record. One of the issues that we had in the original court dispute was that we didn't think that Subway had met its initial burden of showing the actual agreement that they believed that our client had agreed to at all. But after some discussion with the district court, we ultimately conceded that there must have been some call to action, because Subway's position was that this call to action with this language would have been in all the stores. Maybe it would have been slightly different, but not materially different. All right. And then on your first point, with regard to this as mixed media, and there's no cases like this, you're not suggesting that if the font size was big enough, and it was set off in different colors, and it said, by texting this number, you're agreeing to terms and conditions on our website, you're not suggesting that, because it's mixed media, that that couldn't satisfy the reasonably conspicuous standard, right? You're not suggesting that. It could. It would depend on the facts of that case. So it's not the mixed media part of it that makes it somehow outside the scope of what could be reasonably conspicuous. It's the combination of the font size, the lack of any language that there is an agreement being reached. And then what happens once you go to the website is that you're The mixed media element of this case is just one of the factors in deciding the conspicuousness, and whether or not there's actual notice. And so you've got three forms of media. You have the print ad, you have the actual form of media that they were calling our client to take, which was to use her phone to send a text message, not to access the internet. And then you have this third one where the arbitration agreement was supposedly buried in this fine print. Are you aware of any case in any circuit, or even the district court where the court has decided this mixed media issue one way or the other? I'm not. I'm not aware of a single case that has dealt with this issue. That doesn't mean that there aren't any out there. I couldn't find any either. That's why I'm asking. What I do know is that what Subway did here is they put up multiple barriers for our client from the point that she supposedly saw this call to action to the stage where she would have been put on reasonably conspicuous notice of the terms. One of those barriers is the fact that there is mixed media. And that's just one of the elements of the ultimate determination of the court as to whether or not the test under Meyer is or is not satisfied. And so I think that mixed media element just is one thing that goes to the first prong under Meyer, which is whether there's reasonably conspicuous notice. But before we even get to that, we have to decide the second prong in Meyer, which is whether there's an unambiguous manifestation of assent in the first place. And there's not here. In fact, this case, as Your Honor pointed out, is very similar to a browser app agreement because there isn't any language in the actual fine print that suggests that the consumer who would see it is agreeing to anything whatsoever. There's a hyperlink, or sorry, there's not a hyperlink. There's a URL that somebody would have to type in to their phone. But I mean, surely your client agreed to receive text offers. We don't dispute that. In fact, there's one I understand, but you're complaining that they gave an additional text offer beyond what your client agreed to accept. You're saying your client never agreed to accept anything. That's not true. Your client agreed to accept text offers and got maybe 10 and is complaining because she got 11. Well, somewhat. Our case is we believe that they have a broken revocation practice on their app. But putting that aside, yes, our client did agree to receive text messages. That agreement was in bold print at the top, and our client said, I want to get a free sandwich, so I'm going to text my number to this number, and I will get the coupon in response. That was the quid pro quo. Counsel is talking about a completely separate issue as to whether or not there was an agreement to something. The question isn't whether there was an agreement to something. It was whether there was an agreement to arbitrate, and that is where there's an issue with the conspicuousness and with the manifestation of assent because you can go to a website. I'll give you a perfect example. You can go to a website and you can buy something, and you can look at that website and say, I would like to buy this and I agree to buy that product. But there may be some terms and conditions at the very bottom of the web page, such as in the Wynn versus Barnes and Noble case that we cited, and in the SPECT case that we cited, Ninth Circuit and Second Circuit precedent, both analyzed under California law. And those cases held that bearing terms and conditions down at the bottom without an affirmation of some type, a click wrap saying, I agree to these terms. Without that element, there's no actual agreement to those terms. And so that's a threshold problem with Subway's position in this case because there is no language in the call to action that says anything like that. I think Subway argues that by putting in her zip code, she agreed to everything they wanted to send her. Isn't that correct? Well, Subway says that, but that's not accurate. If you actually look at the record of the case, the text messages that were exchanged between our client and Subway don't contain a hyperlink in them that says, by texting us this zip code, you agree to these terms and conditions. And by the way, here they are. If they had done that, I think it would be a click wrap agreement. And we probably wouldn't be here today because we would be in agreement that there was a standard practice in the industry with respect to this type of communication with consumers to have them get a text where they then respond to a text agreeing to terms and usage through an additional text. It's what's referred to as a double opt-in procedure. The Federal Communications Commission has issued rulemakings about it, and it typically does constitute what's called prior express consent under the Telephone Consumer Protection Act if you engage in it. And again, it is an agreement to opt in to receive text messages under the regulatory body of law under the TCPA. But that isn't a completely separate issue from whether there's a contract to a separate set of terms and conditions that's buried elsewhere and never advised that it's agreed to in any way, shape, or form. There are a lot of reasons that this case is completely distinguishable from Meyer, which is the only case that Defense Counsel really cites to that has any weight in this. In addition to the fact that this language was in very fine print, it wasn't a hyperlink. As your honors pointed out, in Meyer, you had a hyperlink that was in blue text, underlined, and in close proximity to the language which said, I agree to these terms, and here they are. And you can click on them right here, right in front of the person. That is a very different scenario from an advertisement that's in print that doesn't say that you agree to any terms, that doesn't have a hyperlink in it, that instead requires somebody to actually be able to see it, type it into their browser. And then on top of that, as your honor pointed out, you have another roadblock. Even if you were to have done that, the first thing that you see on that website is language which says that the agreement applies to that website. And it's in big, bold, all-caps letters at the very top. It would dissuade any reasonable consumer from reading further and believing that that governed the terms of their exchange of the message with Subway for the sandwich, because it didn't relate to the promotion at all. It related only to the website itself. You're saying to be effective, it would have to refer to each promotion? In other words, these terms and conditions apply to your sandwich promotion, your little rebate promotion. They have to keep redoing it. They may have dozens of promotions going on all the time. If you say your terms and conditions at this website, why is it not enough to say these are the terms and conditions that govern this website? Because the transaction at issue had nothing to do with the website. Then what would it say in order to deal with the sandwich? It wouldn't have to say anything. The point I'm making is that it actively dissuaded a reasonable consumer from reading further and believing that that applied to the transaction at issue. So it said too much when it said these terms and conditions apply to this website. If it was silent, it would be a different fact pattern, but it didn't. I understand that, but we're trying to understand the law here that's going to govern many, many transactions and not just your client's sandwich. The standard is whether there's reasonably conspicuous notice of the existence of contract terms that apply to the scenario that a person is engaged in. Here, not only wasn't there reasonably conspicuous notice, there was notice that the consumer shouldn't read further. That's the point that I'm trying to make, and that is a roadblock that was thrown up by Subway. I would not go so far, though, as to say, Your Honor, that if it doesn't specify at the top of the page that every single thing that it applies to, that therefore it's an invalid arbitration agreement. I would not go that far. I don't think that would be a fair reading, but I do think that it is fair to say that if you put up language that says this applies only to this, that if the consumer doesn't have any application to what it says, that they're not going to read further and they're going to be discouraged from doing so. And that's a very different situation from the cases that defense counsel is citing to regarding the delegation clause. You don't even get to the delegation clause if you're discouraged from reading further. I think your time has expired. In conclusion, did you have a sentence in conclusion? If not, we'll go back to Mr. Biles. Certainly, Your Honor. I just want to emphasize that there are about 20 different roadblocks that were put up by Subway, any one of which is subject to appellate authority either by this circuit, by the Ninth Circuit, or by the California Court of Appeal interpreting California contract law. And those issues were thoroughly laid out and reviewed by the district court, which came to the correct conclusion that there's no contract here. There's no contract because there's no agreement to anything. And even if there was, it's completely inconspicuous, and it's completely unreasonable for Subway to think that these terms should apply to a consumer like Ms. Solomon. Thank you, counsel. Mr. Bowen, you reserve three minutes for rebuttal. Unmute. Unmute yourself. My apologies. Thank you, Your Honor. We don't think there are 20 roadblocks, and we also don't think this is mixed media, or other complexity, or browse wrap, or click wrap, or hybrid wrap, or any other term. This goes back to first year contracts class. They're express assent or implied assent. This is an implied assent case. So the question is, was the notice sufficient? And here, you have a notice that required action on a mobile phone. So Meyer applies. And indeed, plaintiff's Ms. Solomon's own declaration shows that she understood this. The Meyer case teaches that you have to assume that a reasonable mobile consumer has entered into contracts before. Her declaration shows she's done that. She talks about many other kinds. Let me give you a hypothetical. Suppose you had a print ad for a car dealer that said, give this code. Come to our dealership. Give this code, and we'll give you 5% off on your car. But it had the same type of language at the bottom, and the same font that we don't know that your client had here. And within those terms and conditions, it said, you can't get a refund if you purchase this car. You're subjecting yourself to arbitration for any disputes regarding the purchase. All these things were in those terms and conditions. If the consumer did nothing else but show up at the dealership with that code, are they then agreeing to all those terms and conditions? I think there has to be a concept of proportionality in what's reasonable. And this is a case involving a free sandwich. The US Supreme Court in the Carnival Cruise Line case, at pages 593 to 94, while not talking about what is or isn't reasonable, but in talking about small print on the back of a cruise line ticket, where a consumer pays a lot more than a free sandwich, talks about how common sense dictates that when there is small print, that those are terms and conditions. The consumer is free to read it or ignore it, but at her peril. But that's on the ticket. That's on the ticket. This is not on the ad, and the person is doing nothing more than providing a code for what they think is a discount. Well, no, because the ad plainly has small print. The Supreme Court makes clear when there's small print, a consumer should be on reasonable notice that those are the terms and conditions, and it benefits companies. A company like Subway can't give away a free sandwich. Let me ask you the same question. You're saying this is based upon prior cases, but is there any case in the United States that has said that a print ad of this nature that your client utilized, that someone has assented to terms and conditions through this type of media, mixed media, I guess? We don't think it's mixed media. We think it's a mobile... Whatever it is, whatever it is, however you want to describe it. You can describe it however you want. Is there a case out there? That's my question. I mean, it's hornbook law about notice and changing circumstances based on notice, but we think the case that applies is Meyer, because this is a mobile contract formation, and this is what she did. She took out her phone. She didn't have to do it. She could have stepped out of line to read the terms and conditions. She could have printed them at home if she wanted it, but this is a mobile contract. She took out her phone. She typed in the numbers. There was the ad there, and there's nothing in the record saying this was small. Our understanding, it's a big display. If that's a factual question, it should be addressed on remand, but we do think that plainly there was notice. Her declaration shows that she knows what type of... When you're dealing with issues like that, as opposed to a website, which I think there'd be no dispute as to the size and that the person saw it, they would have seen it. With things like this, you could have something could be blocking the bottom of the sign, where that is in this type of media, where it's something in the store on a counter. There's all these variables that would unknown. Lighting in the store, all kinds of crazy things could affect a consumer's ability to see that, as opposed to a website where everybody would see it the same way. It could be that the concept is inquiry notice. Was the consumer put on inquiry notice? If the lighting was poor and if the type print was bad, she was on inquiry notice. If that were the issue, she would have raised it. There's nothing in the record to suggest the lighting was bad, the print was unclear. What's undisputed is... She doesn't even remember seeing this sign. How could she speak to that? She doesn't even remember seeing it. Again, it's for a free coupon. This isn't the case about buying a car. It's about a free sandwich and the question of whether a company can reasonably give a free sandwich. What is reasonable inquiry notice to someone standing in line at a store? She saw the small print. The Supreme Court suggests that consumers know that hand out on the street free sandwiches if they wanted to hand out free sandwiches. It's not unreasonable to assume there would be terms and conditions. And here it said terms and conditions and provided the exact address. She could have typed it in. She could have printed it at home. She could have stepped out of the line. Nothing forced her to accept the free sandwich. The council will reserve decision on this interesting case.